PIELKE, Respondent, *v.* CHICAGO, M. & ST. P. RY. CO., Appellant.

### 1. Appeal—Review—Weight and Sufficiency of Evidence.

Though much suspicion is thrown upon the testimony of a witness by the circumstances and the testimony of others of equal means of information, still, where he was not impeached, swore positively to the facts, and no motive for false swearing appears, an appellate court will not disturb the verdict founded on his testimony when a new trial, on the ground of the insufficiency of the evidence to support the verdict, has been denied by the trial court.

### 2. Railroads—Continuous Fire—Negligence—Proximate Cause —Trial—Instructions.

In an action against a railroad company for damages caused by a fire seen for the first time in the afternoon, on an issue of its connection with one claimed to have been negligently set out in the morning, the court said to the jury: "Unless you find the fire in the morning has a connection with the afternoon fire, the plaintiff expects a verdict for the defendant;" and this being the only reference in the charge to the proximate cause of the injury, *held* misleading, and susceptible of an erroneous construction.

### 3. Same—New Trial—Appeal.

While the mere omission to instruct on a given proposition, there being no request therefor, is not error, still, if the appellate court can see the jury was misled by the instructions given, it will grant a new trial.

### 4. Same—Sufficiency of Evidence.

Where the evidence was that a fire set out through alleged negligence in the morning was believed to have been extinguished, and it appeared the damage was done by a fire seen for the first time in the afternoon, a strong wind having arisen in the mean time, and with its aid the latter fire spread rapidly in the direction of the plaintiff's property; and the only evidence of connection between the two fires was mere opinion, and the circumstances were that it was as reasonable to suppose the extension of the afternoon fire to that of the morning as the one of the morning to the afternoon, the appellate court was inclined to hold that the morning fire was not the proximate cause of the injury; but *held,* if the

case were submitted to the jury, it ought to have been done under such instructions as would have given them clearly to understand that they were to determine whether or not the morning fire was the direct and proximate cause of the injury.

(Argued May 12, 1888; reversed May 25; opinion filed February 4, 1889.)

Appeal from district court of Richland county; Hon. W. B. McConnell, Judge.

*Ball, Wallin & Smith,* for appellant.

It is conceded that there was no evidence, direct or circumstantial, that connected the defendant with the ignition of the fire which did the damage to the plaintiff; that is, the afternoon fire, if the same was separate and distinct from the morning fire.

Was there any evidence, direct or circumstantial, sufficient in law to establish any connection between the A. M. and the P. M. fire?    See Gr. Ev. (Redf. Ed.) § 13; *Commonwealth* v. *Webster,* 5 Cush. 295, 312.

The fact sought to be proved was that the defendant ignited the afternoon fire, and that in fact it was but a continuation of that of the forenoon.    In view of all of the facts and circumstances, no reasonable connection, in the relation of cause and effect, founded upon "experience, and observed facts and coincidents," could possibly be established between the two fires. Therefore, the court should have directed a verdict for the defendant, for the reason that there was no evidence from which the jury could reasonably find that the defendant caused the injury complained of.

Was there a fire in the morning?    We think the evidence shows there was not.

The existence of the morning fire was one of vital consequence to the defendant; and, this being true, it is equally clear, under the adjudications, that the defendant under the evidence in this case was entitled at the hands of the court to a charge which would be explicit and emphatic on the point, and also to have such charge given in any proper language which should be chosen

by the defendant's counsel. Such a request was framed, and presented to the court, but was refused. We submit that, while the learned justice who tried the case did several times during his charge to the jury allude to the matter of the origin of both the alleged A. M. fire and the conceded P. M. fire, that none of these references brought out and emphasized the vital nature of the question as to whether or not there was a fire in the morning as a distinct matter of fact. When the court last referred to the A. M. fire it used the following language: "Unless you find as a matter of fact that the fire first seen by Lindgren has a connection with this fire, the plaintiff expects a verdict for the defendant."

It is clear that the language was very prejudicial to the defendant in this: (1) It assumes the fact in controversy to be true, *i. e.*, that there was in fact a forenoon fire; and (2) that the plaintiff's witness Lindgren as a matter of fact saw an afternoon fire.

A charge which assumes the existence of controverted facts is erroneous. *Smith* v. *Dukes*, 5 Minn. (Gil.) 301; *Jones* v. *Towns*, 26 Minn. 172, 2 N. W. Rep. 473.

We are satisfied that this inadvertence of the judge, together with the refusal to give the defendant's request in words chosen by its counsel, was error, which operated to the defendant's prejudice, and also was error of law under the authorities. Code Civil Proc. § 248; *Galloway* v. *McLean*, 9 N. W. Rep. 98.

*W. S. Lauder* and *Folsom Dow*, for respondent.

There are but two questions to be determined upon this appeal:

1. Was the fire which destroyed plaintiff's property set out by the defendant?

2. If this fire was set out by defendant, was defendant guilty of such negligence as would render it liable for the damages it occasioned?

In support of the view that the evidence was sufficient to war-

rant the jury in finding as a fact that the fire was started by a spark, coal, or cinder from defendant's locomotive, see Wood, Ry. Law, 1348; Pierce, R. R. 436, 437; *Woodson* v. *Milwaukee & St. P. Ry. Co.*, 21 Minn. 60; *Karsen* v. *Milwaukee & St. P. Ry. Co.*, 29 Minn. 12, 11 N. W. Rep. 122; *Gibbons* v. *Wisconsin V. Ry. Co.*, 28 N. W. Rep. 170; *Wolff* v. *Chicago, M. & St. P. Ry. Co.*, 25 N. W. Rep. 63; *Butcher* v. *Vaca V. R. Co.*, 8 Pac. Rep. 174; *Christ* v. *Erie Ry. Co.*, 58 N. Y. 638; *Field* v. *N. Y. C. Ry.*, 32 N. Y. 339; *Hoyt* v. *Jeffers*, 30 Mich. 181, 91 U. S. 454.

It is contended by the appellant that the court erred in refusing to charge the jury that, "if you find as a fact from the evidence that no fire started in the forenoon, your verdict must be for the defendant."

We think that, had the jury returned a verdict for the defendant based upon the theory that no fire originated in the forenoon, as testified to, the same would have been in direct conflict with all of the evidence upon that point, and it would have been the duty of the court to have at once set it aside.

The court in his charge did not assume that there was in fact a forenoon fire. On the contrary, it left the whole question of the origin of the fire that destroyed the plaintiff's property to the jury.

In support of the second proposition, see Pierce, R. R. 434, and cases cited; Wood, Ry. Law, 1350, 1362, and cases cited; *Sibilrud* v. *St. Louis Ry. Co.*, 29 Minn. 63, 11 N. W. Rep. 146; *Kellogg* v. *Chicago & N. W. Ry. Co.*, 17 N. W. Rep. 132; *Wolff* v. *Chicago, M. & St. P. Ry. Co.*, *supra; Jones* v. *Mich. C. Ry. Co.*, 26 N. W. Rep. 662, and note; *Gibbons* v. *Wis. V. Ry. Co.*, *supra.*

TRIPP, C. J. This is an action brought to recover for damages sustained by fire alleged to have been set out by defendant's engine upon its right of way, which spread and extended to the plaintiff's land, destroying hay, buildings, trees, and other property. There is no contest between plaintiff and defendant but that the fire occurred which did the damage, and that the amount of the damages found by the jury is a reasonable and

proper amount; but the defendant insists that it did not set
the fire, and that the evidence is insufficient to sustain the ver-
dict in that respect.

It appears from the abstract in the case that in the fall of
1885, some time in the latter part of September or forepart of
October, the defendant's railway ran and was located across
sections 6, 7, and 18, township 135, range 149, extending in a
north-westerly direction. The plaintiff was the owner of certain
lands in section 5, about a mile in a north-easterly direction
from where the fire was first discovered. The theory of the
plaintiff is that the train of defendant, passing south in the fore--
noon, set fire to the dry grass upon its right of way adjoining
the land of one Johnson, in section 7; that this fire backed
south against the wind during the forenoon, and was the same
fire that was discovered in the afternoon running in a north--
easterly direction, and which damaged the plaintiff. There is a.
section road running east and west between sections 6 and 5 on
the north, and 7 and 8 on the south. In section 7, immediately
south of this road, and adjoining the railroad on the east side,
was a field of breaking, belonging to one Erick Johnson, extend--
ing north and south about one-half mile, and occupying the
triangular piece of land on the east side of the railroad, except
a small piece of prairie in the angle where the railroad and high--
way cross each other, and a small building spot south of the
highway, and between it and the breaking. Along the railway,.
and between the road-bed and breaking, the right of way was
covered with dry grass, some of which had been mowed, and lay
upon the ground. Along this right of way, and parallel with
the railroad, there was also a carriage road used by teams and
carriages.

Lindgren, a witness for the plaintiff, testified that during the
forenoon he was at work on his place on section 6, north of the
section-line road, and saw the defendant's train go south, and
that in a few moments thereafter a fire sprang up along the
right of way "close into the track," at about the southern angle of
the triangular piece of prairie between the Johnson breaking and.

the railroad; that this fire burned over this small piece of prairie, and burned up to Johnson's buildings, but that he succeeded in saving the buildings and stacks and "put out the fire;" that after dinner, and about 2 o'clock in the afternoon, he discovered "another fire" about 40 rods further south, and at the south extremity of Johnson's breaking; that the wind was then blowing from the south-west towards the plaintiff's premises, which it soon reached, and did the damage complained of. This witness did not see any fire after the fire in the forenoon until the fire about 2 o'clock P. M., nor did any one but him see the fire in the forenoon. Witness was permitted to give his opinion that the fire he saw in the morning backed south against the wind until it got past the Johnson breaking, and then was carried in a north-easterly direction onto the land of plaintiff; and one other witness, Mr. Dow, one of plaintiff's attorneys, was permitted to testify that something over a week after the fire he examined the premises, and found the prairie grass on defendant's right of way between the road-bed and the Johnson breaking burned off, and the entire right of way west of the breaking burned over.

Defendant contends—*First*, that the evidence was insufficient to prove there was any fire in the forenoon; *second*, that there is no evidence to prove that the fire in the forenoon and the fire in the afternoon were the same.

1. It is true that much suspicion is thrown upon the evidence of Lindgren as to the fire he claims to have extinguished west of the Johnson breaking. The land in that vicinity is shown to be comparatively level, with nothing to obstruct the vision for several miles, and along the entire right of way where the fire is claimed to have originated. A number of people were at work during the entire forenoon in the vicinity, and in full view of the premises. Mr. Marty, a witness for the plaintiff and defendant both, testified that he was at work in section 8, across a quarter section from the Johnson breaking, and in full view of it; that he was plowing during the forenoon; that he saw no fire, and that if there had been a fire he could and probably

would have seen it; that the first fire he saw was about 2 o'clock in the afternoon, south of the Johnson breaking.

Erick Johnson, the owner of the Johnson breaking and premises, testified that he was away from home during the forenoon; that when he got home in the afternoon the fire had gone past his place to the north-east, and that Lindgren, the witness, was there, and had his oxen and team there, and told him (Johnson) that he had put out the fire around his (Johnson's) place, but did not say anything about a fire in the forenoon.

Swan Swanson testified that during the forenoon he was plowing on the east side of the railroad, and south of the Johnson premises, and saw no fire during the forenoon; that he was at Anderson's place, on section 8, east of the school-house, when the fire started on the right of way south of the Johnson breaking, and that it was "round like,—just as if it had been lately started." Ole Anderson, for whom Swanson worked, testified that during the forenoon he was plowing in section 8, at the south-east corner of the north-west quarter; that there was nothing to obstruct his view, and that, if there had been a fire on the right of way, he could and probably would have seen it; and he further ventures the opinion that he "don't believe there was any such fire there in the forenoon;" that he was at his own house when the afternoon fire started; that it started directly west of his house, and west of the school-house, and south of the Johnson breaking,—about 50 or 60 rods; that he raised up from his seat, and said to Swan, "There is a fire just starting;" and that it was just about 2 o'clock at that time. Ethleen Kuppenberg, a school-teacher, was at the school-house in section 7, west of Anderson's house, towards the railroad, and testified that she was "on the watch for prairie fires;" that the first fire she saw was about $2\frac{1}{2}$ P. M., directly west from the school-house, near the railroad; that "it had just started;" that she is positive as to the time, owing to her recess that day; and that she never heard of any forenoon fire until a week ago.

The evidence as to the forenoon fire rests almost entirely upon the testimony of Lindgren. No one else saw it, though

they had nearly equal opportunities with him, and were no doubt actuated by the usual vigilance that characterizes the observation of the farmer at that time of year with reference to prairie fires.    There was, however, no impeachment of this witness. He swore positively to the *facts*, as he claimed them, and no motive was shown for willful false swearing upon his part.    The jury have had the opportunity of seeing the witnesses, and weighing their testimony, under the instructions of the court; and the lower court has denied a new trial on this ground, and we cannot, without violence to the law governing appellate courts, disturb the finding.

2. Is there sufficient evidence to prove that the fire in the forenoon and the fire in the afternoon were the same fire?    A careful analysis of the evidence, and the proceedings had, convinces us that one proposition of law has been entirely overlooked in the trial and consideration of this case; and while we deem the question properly here, under the exceptions taken, no reference has been made to it directly in the argument of counsel, nor was it mooted in the trial of the lower court; and that is, the entire absence of any evidence to show that the fire, if it resulted from the forenoon fire, was a continuous one, or that the fire in the forenoon was the proximate cause of the damage sustained by the plaintiff.    It was from a mile to a mile and a half from the initial point of the fire first seen in the afternoon to the premises of the plaintiff.    The fire, in its most direct course, must cross the farms of several others, besides the highway; and while the fire seen at the right of way in the afternoon, or the "afternoon fire" as it is designated by the witnesses themselves, is shown to have been continuous, there is not only an entire absence of any showing that the fire seen by Lindgren continued to burn and was the same fire that did the injury, but the positive evidence is that the forenoon fire was entirely extinguished.    At most, there is a mere opinion of the witnesses that the forenoon fire backed up and became the afternoon fire; and there is some evidence that the right of way along which it would have made such journey was burned over.    But all this

could have been done by the fire seen first in the afternoon. It
could have run west of the breaking at the same time it ran east.
No one pretends to say it did not, and, if the evidence of Lind-
gren is to be believed, there was but little left on the west side
of the breaking to burn when he put out the forenoon fire. Be-
sides, the witness Dow testifies that the right of way was burned
out *clean*. "This strip was burned clean out, close to the road
here, next the building,—burned clean from the track and the
breaking, down to the point right at the south end of the break-
ing." And this he repeats several times,—"burned right up
close to the railroad track." This is not usual with back fires.
This testimony would tend to show that it was burned by a di-
rect fire from the south. There is no evidence upon which the
court can say the jury would be warranted in finding the fire of
the forenoon was the proximate cause of plaintiff's loss. There
is no direct evidence to prove this fact, but the direct evidence
is to the contrary, and the circumstances relied upon to prove
such theory tend as strongly, and more so, to prove the oppo-
site one.

The doctrine of proximate and remote cause has undergone
great discussion in this country and in England; and, while the
courts have attempted to define what is proximate and what is
remote damage, it may be truthfully said: "There can be no
fixed and immediate rule upon the subject that can be applied
to all cases. Much must therefore depend upon the circum-
stances of each particular case." *Page* v. *Bucksport*, 64 Me. 53.
The difficulty is not in the truth of the maxim, *causa proxima non
remota spectatur*, but in its application. Greenleaf lays down
the rule that "the damage to be recovered must always be the
natural and proximate consequence of the act complained of."
2 Greenl. Ev. § 256. Parsons, after referring to the confusion
in which the question is left by the decisions, says: "We have
been disposed to think that there is a principle derivable, on the
one hand, from the general reason and justice of the question,
and, on the other hand, applicable as a test in many cases, and
perhaps useful, if not decisive, in all. It is that every defend-

ant shall be held liable for all of those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into his consideration." 2 Pars. Cont. 180.

Proximate and remote damages are the result of proximate and remote causes, reasoning in an inverse order. Strictly speaking, there are no remote causes and no remote damages; the proximate cause is that which produces the damage. The remote cause is used, by comparison, as the irresponsible agent which seeks shelter behind the responsible one. The proximate cause is the *vis major* which intervenes and usurps the place of the primary force, or unites with and overcomes it, so as to become the principal and real cause of the damage sustained; or it is the primary cause, traced back through intervening and intermediate causes, by natural and continuous succession, from the injury resulting to the wrong committed. The intermissions existing, the time elapsing, or minor cause intervening, do not affect the conclusion, so that the original cause be continuously operative as the principal factor in producing the final result. The cases have generally arisen where a large number of buildings, separate and detached from each other, have been successively destroyed; and, while the cases are by no means harmonious, we think it may be safely stated that whenever the fire has been of that character that the firing of the second or third building, or others in succession, was the direct and natural result of the firing of the first, under the circumstances of the case, the original fire was the proximate cause. But if the location of the buildings was so remote, or the location and circumstances such, that the party committing the wrong could not naturally have expected such a result, or such result would not naturally have flowed from such a cause, then it is not proximate, but remote.

The cases of *Ryan* v. *Railway Co.*, 35 N. Y. 214, and *Railway Co.* v. *Kerr*, 62 Pa. St. 353, are generally cited as holding that, as a matter of law, the firing of the second building by

taking fire from the first is remote, and not proximate; but I think a careful study of these cases, and a limitation of the doctrine announced to the facts of each case, will bring them in line with the decisions of other states where no statutes have intervened to govern the opinion of the courts. Chief Justice THOMPSON, in *Railway Co.* v. *Kerr*, *supra*, uses the following language: "There might possibly be cases in which the causes of disaster, although seemingly removed from the original cause, are still incapable of distinct separation from it. * * * The maxim of *causa proxima non remota spectatur* is not to be controlled by time or distance, but by the succession of events." And such is the view taken of these cases in the states where they were rendered. *Railway Co.* v. *Hope*, 80 Pa. St. 373; *Webb* v. *Railway Co.*, 49 N. Y. 420. The rule is very clearly and succinctly stated in *Railway Co.* v. *Kellogg*, 94 U. S. 475, a case in which a steam-boat had set fire to an elevator, which communicated to a mill and lumber-yard, disconnected and distant therefrom about 388 feet. The lower court had been asked to charge, as a matter of law, that the injury was too remote, and the refusal of the court so to charge was alleged as error; and the supreme court, on appeal, in affirming the action of the lower court, and holding that under the circumstances of that case it was a proper question for the jury, says: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science, or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market-place. *Scott* v. *Shepherd*, 2 W. Bl. 892. The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole,

or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But, when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of the jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are discovered by new and independent agencies; and this must be determined in view of the circumstances existing at the time."

New Jersey, in a carefully considered case, states the rule as follows : "In the rule which limits a recovery for a tort to those damages which are its natural and proximate effects, the natural effects are those which might reasonably be foreseen,—those which occur in an ordinary state of things; and the proximate effects are those between which and the tort there intervenes no culpable and efficient agency." *Wiley* v. *Railway Co.*, 44 N. J. Law, 247. And in Maryland her courts have adopted the same rule : "In a case where the fire has not been communicated directly to the plaintiff's property by sparks or cinders from the

locomotive, as where it has spread from its first beginning, and thus been communicated indirectly to the plaintiff's property, it is a question proper to be submitted to the jury to determine, from all the facts of the case, whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by 'some intervening force or power, which stands naturally as the cause of the misfortune.' " *Railway Co.* v. *Gantt*, 39 Md. 115, 11 Amer. Ry. Rep. 210.   Justice MILLER in *Insurance Co.* v. *Tweed*, 7 Wall. 52, says: "One of the most valuable of the *criteria* furnished us by these authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause.   If a new force or power has intervened of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

In *Fent* v. *Railway Co.*, 59 Ill. 349, the facts were similar to those in *Railway Co.* v. *Kellogg, supra*.   The railway company had set fire to a warehouse by sparks from its engine, which had communicated to plaintiff's buildings, about 200 feet distant, but disconnected therefrom; and Judge LAWRENCE, in a very well-considered opinion, goes over the whole doctrine, English and American, and criticises the cases of *Ryan* v. *Railway Co.* and *Railway Co.* v. *Kerr, supra*, with much severity, as announcing a doctrine at variance with the decisions of all other American courts, and as standing alone.   This case was before the supreme court on appeal from the decision of the lower court in sustaining a demurrer to evidence, under the practice of that state; the question being whether, as a matter of law, the injury was remote.   The court held that it was, under the facts of that case, a proper question for the jury, and reversed the case.   In delivering the opinion of the court Judge LAWRENCE laid down the rule as follows: "If a loss has been caused by the act, and it was, under the circumstances, a natural consequence which any reasonable person could have anticipated, then the act is a proximate cause, whether the house burned was the first or the tenth,—the latter being so situated that its destruction is a con-

sequence reasonably to be anticipated from setting the first on fire. If, on the other hand, the fire has spread beyond its natural limits by means of a new agency,—if, for example, after its ignition a high wind should arise, and carry burning brands to a great distance, by which a fire is caused in a place that would have been safe but for the wind,—such a loss might fairly be set down as a remote consequence, for which the railway company should not be held responsible." In a later case in that same state, (*Railway Co.* v. *Muthersbaugh*, 71 Ill. 572,) the second building was situated 101 rods from the first building set on fire from the engine. It was covered with straw, and there were no intermediate buildings. A high wind was blowing in a direct line towards it from the first building burned. The court held, as a matter of law, that the injury was too remote; citing with approval the rule announced by Judge LAWRENCE in *Fent* v. *Railway Co.*, *supra*.

Rorer on Railways, after an elaborate review of the authorities, states the doctrine derived therefrom as follows: "To our mind the American cases clearly recognize seven classes of cases settled by authorities in regard to damages by fire communicated from engines of railroad corporations, each of which is to be regarded as controlling, and as a rule of decision, within its own respective judicial sphere. (1) That, except where altered by express statutory enactment, there prevails, everywhere in the American courts, the well-known common-law rule that one is not liable for the consequences to others of a prudent and lawful use of fire upon his own premises, if without fault or negligence on his part, although it escape, if without his fault, to that of his neighbor, and do him an injury there. (2) That one is liable for an injury that occurs to another by an imprudent or unlawful use of fire on his own premises; or, if properly used there, then for negligently suffering it to escape to the premises of another, whereby a damage is done to the owner thereof. (3) But, to sustain an action in such cases, the injury must be the direct and proximate result of solely the act complained of; or, in other terms, the act complained of must alone have been the

direct, proximate, and sole cause of the injury and damage sus-·
tained, and not merely remotely so.    (4) That the cause of the
injury is proximate, and the damage is the proximate result·
thereof, so long as the fire is continuous in its progress and rav-
ages, by an unbroken chain or connection.    (5) That the cause
of the injury is but remote, and the damage is but the remote
result thereof, as to all the ravages of the fire caused by a re-
kindling thereof, or communication of it anew, from and be-
yond where there occurs an open break in the burning or chain
of its continuity; that in such latter case the first fire, and not
the original negligence of the party setting it out, is the cause of
the·latter, and of the injury done thereby; and that, therefore,
the original setting out and the latter injury are, in their rela-
tions to each other, remote, and no liability exists.    (6) Under·
the statute in Massachusetts, the rule of liability, as settled in
the courts of that state, is that railroad corporations are abso-·
lutely liable for all damages caused by fire communicated from
their engines, irrespective of the question of negligence.    (7)
That by statute in some others of the states, where the negli-
gence of the company is yet an ingredient of liability, the injury
is made to be presumptive evidence of negligence, and the bur-
den is shifted onto the railroad companies, defendants, to nega--
tive the same by proof of proper care."    2 Ror. R. R. 806–808..

The case of *Doggett* v. *Railway Co.*, 78 N. C. 305, is parallel,.
and almost identical, with the one at bar.    The original fire set
by the engine occurred about 10 or 11 o'clock in the forenoon,
and, having run across the lands of several persons, and burned
several fences, had been extinguished, as was supposed, before
it reached the land and fence of plaintiff; but later, and some-
where about 3 o'clock in the afternoon, the fire was discovered
burning the fence of plaintiff, and subsequently did the damage
complained of.    It was presumed that the original fire of the
forenoon had not been all extinguished, and was rekindled by
the wind.    There was no direct evidence, otherwise than could
be conjectured from its path, to connect the fire of the fore-
noon with that of the afternoon fire which did the damage.

The court, in reviewing the judgment of the lower court upon a verdict against the company, says: "The fire had been checked, and was supposed to have been extinguished by those who had been contending with it, and they had retired from the ground. Here was a cessation of the cause, a rest,—an interval of what duration is not stated. What occurred afterwards, resulting in the plaintiff's injuries, was remote damage, which could not be reasonably foreseen or anticipated by the defendant as a necessary or probable result of the first negligence; and in point of fact those who were on the ground, and the witnesses and the actors at the point of conflagration, and whose judgment is entitled to most weight, did not anticipate a further spread of the fire. These persons were the neighbors, and probably the owners of the fences on fire, and as such were most deeply interested in securing themselves against present and future danger. If they did not contemplate a renewed outbreak of the fire, upon no reasonable hypothesis can it be assumed that the defendant contemplated it as a necessary or probable result of the first cause. The facts do not constitute such a continuous succession of events, so linked together as to become a natural whole, which would make it a case of proximate damages; but the chain of events, by the temporary cessation and extinguishment of the fire, was so broken that it became independent, and the final result cannot be said to be the natural and probable consequence of the primary cause,—the negligence of the defendant. The maxim here applies, *causa proxima non remota spectatur.*"

Let us apply the doctrine of these cases to the one at bar; and conceding, as the jury must have found, the fact to be that there was a fire in the forenoon, there must have been a number of hours intervening between the time the first fire was supposed to have been extinguished and the time the second fire was discovered. Lindgren testifies that it was about 11:30 A. M., but several witnesses swear that he had told them at other times prior to the trial that it was about 10:30 A. M.; and the time-tables which were in evidence fixed the time for the departure of this

train from the station north at 9 : 05 A. M., and the time of its arrival at the station south as 9 : 55. The evidence, however, showed that that train was frequently late; so that the probability is that the fire did not occur later than some time between 10 and 11 A. M. The witnesses substantially agree that the afternoon fire occurred some time between 2 and 3 P. M., so that there must have existed an interval of at least three or four hours between the time the first fire was extinguished and the occurrence of the second fire. The testimony is that the wind came up strong from the south-west at about 2 o'clock, and that the fire spread with great rapidity. Can it be said that the defendant, if it set the first fire, could have anticipated such a result? Could it be presumed to have foreseen more than the witness on the ground, whose own property was endangered, and who swears that he put it out and went home? He must not only have presumed that the fire would spread no further, but he must have felt sure and certain that it was extinguished. An igniting or firing of the prairie grass at that season of the year was like bearing a lighted candle into an open powder magazine; and if the witness, with such danger confronting him, would have felt sufficiently certain that no further damage could result from the forenoon fire, can it be said that the defendant ought originally to have foreseen the actual and final result?

Again, was not the wind, which sprang up with renewed force in the afternoon, the intervening agency, the proximate cause, which produced the injury complained of? If some human agency had rekindled the smouldering fire, and scattered it along the dry, unburned grass, producing the same result, no one would have said the first wrong-doer was responsible for the loss occasioned by the subsequent fire; and ought the defendant to be the more responsible because the power was superhuman?

In each case the question is, what was the direct cause of the result? There must be an end somewhere; there must be same place at which the courts will call a halt, and say that it will refuse longer to trace effect to primary cause, where the

object is to fix liability and award compensation for damages sustained and wrong suffered. If this were not so, in the infinite changes that occur, and the intimate relations that exist, between all agencies, natural and artificial, almost any man might be liable to be indirectly connected with a wrong committed. No better rule of compensation can be devised than that allowed by the rule making the wrong-doer liable for such damage as might be reasonably anticipated by him under the circumstances in which he was placed when he committed the act complained of. This rule has been approved by this court in *Hannaher* v. *Railway Co.*, *ante,* p. 1, 37 N. W. Rep. 717, (determined at the February term of this court, 1888,) and the cases there cited, where the rule is laid down that, in the construction of roads, bridges, and similar work, the workmen are only required to construct them in the usual and ordinary manner, and are not required to provide against tornadoes, cyclones, and unusual superhuman force.

But while we are inclined to hold that upon the testimony as it is presented in this case, that the fire claimed to have been set by the defendant in the forenoon was not the proximate cause of plaintiff's loss, we are not required to pass finally upon this question; for there was, in our judgment, clearly a mistrial of this case, in that, if the facts would have warranted a submission of this case to the jury, it should have been submitted so that this question could have been passed upon by them. What is the proximate and remote cause is generally a question of fact, and must be submitted to the jury under proper instructions from the court; and while in this case we are inclined to think the court was warranted in refusing the instructions asked for by the defendant, and while it is also generally true that the mere failure of the court to instruct upon a given proposition, upon which he is not asked to instruct, is not error, yet if, in his failure to so instruct, the appellate court can see from the instructions given that the jury were misled, it is its duty to grant a new trial. An inspection of the charge in this case reveals the fact that the court touched upon this ques-

tion but once, and he then told them : "The negligence charged here is the negligence charged in the manner in which they kept their right of way. Counsel for plaintiff desires me to say that, it being demonstrated that this fire was at a point below the plowed strip, as indicated upon the diagram, that being agreed to have been in the afternoon, unless you find as a matter of fact that the fire as seen by Lindgren has a connection with this fire the plaintiff expects a verdict for the defendant; so that takes away a great deal of my charge." This was not only misleading, but if it was meant thereby to tell the jury that they could find for the plaintiff, *if they find that the second fire had any connection with the first fire*, it was error; for, as we have seen, the jury must not only have found a connection between the two fires,—they must also have found that the first fire, or the wrongful act causing it, was the proximate cause of the second fire, and of the damage arising therefrom. This is the only place in the entire charge in which the court referred to any connection between the first and second fire, and he made this statement so prominent as to tell the jury that it "took away a good deal of his charge" already given. If the cause was submitted to the jury at all, it should have been submitted under such instructions as would have given them clearly to understand that it was for them to determine whether the fire in the forenoon, claimed to have been seen by Lindgren, was the direct and proximate cause of the fire by which the plaintiff sustained the damage complained of.

There was clearly a mistrial in this case, and, as other evidence may be produced upon a new trial which may connect the fire in the forenoon with that in the afternoon, and make it the primary cause, the judgment of the lower court is reversed, and the cause remanded for a new trial, subject to the opinion of this court therein. All the justices concur.