KELSEY v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.

1. When an amendment to a complaint is necessary, and the record shows that the amendment was allowed by the court, although the record does not disclose that it was actually made, and the trial of the cause is proceeded with without further objections, it is not a violent presumption to presume that the complaint was amended to show a good cause of action.

2. Under Section 4938, Comp. Laws, it is the rule to allow amendments; to refuse is the exception. The right to amend is not an absolute, unconditional one, but is to be allowed in furtherance of justice, upon equitable terms, and must be one which will not change substantially the claim or defense.

3. Pleadings in justice court are not required to be in every particular formal, but must be such as to enable a person of common understanding to know what is intended.    They may be oral or written.    If oral an entry of their substance must be made in the docket.

4. Verdicts are to have a reasonable intendment, and to receive a reasonable construction.    A verdict is good if the title sufficiently identifies the cause in which it is rendered, and the findings of the matter submitted in issue may be ascertained and clearly understood from the wording of it.

5. If a damaging fire is shown to have been propagated by sparks or fire from a locomotive engine of a passing railroad train of a chartered company, such proof raises a presumption of negligence upon the part of the company, so as to cast the burden of proof upon it of showing that the locomotive engine was properly constructed and managed at the time of the fire.

6. The allowing of dry grass or other combustible material to accumulate on or near the road-bed of a railroad company is evidence of negligence on the part of said company to be considered by the jury in an action of damage by fire.

(Syllabus by the court.    Argued Feb. 14, 1890.    Opinion filed May 1, 1890.)

Appeal from district court, Brookings county; Hon. JAMES SPENCER, Judge.

Action to recover for property destroyed by fire.    Judgment for plaintiff.    From that judgment defendant appeals. Affirmed.

The material facts are stated in the opinion.

*R. H. Brown* for appellant.

Although respondent was permitted by the lower court to amend his complaint he failed to do so.    This was fatal.    When allowed to amend a party must *serve* his amended pleading. § 4939 Comp. Laws.    The law in regard to amended pleadings is mandatory.    Bode v. New England Investment Co , 42 N. W. 661.    The respondent cannot amend in this supreme court. Hooper v. Wells, 27 Cal. 118; 29 Cal. 460; 15 N. Y. 590.

The alleged railroad fire was not the proximate cause of respondent's loss and he cannot recover.    Pielke v. C. M. & St. P. R. R. Co., 41 N. W. 669; Kellogg v. M. St. P. R'y Co., 94 U. S. 256; 2 Parsons on Contracts, 180; Sedgwick's Damages, Chap. III; 6 Southern Rep. 19–218.

No liability arises from the consequences to others of a prudent and lawful use of fire upon ones own premises although it escape and do a neighbor injury, if without the negligence or fault of the owner. Goudy v. C. & N. W. R'y, 30 Ia. 420; Barrows v. H. R. R. Co., 15 Conn. 124; Bedford v. H. & St. Joe R'y, 46 Mo. 456; Meyer v. Vicksburg R'y, 6 So. 218; Edrington v. C., N. O. & T. R'y, 6 So. 19.

In order that respondent may recover, negligence must be alleged and proved. He has wholly failed to do either.

*Mathews & Murphy* for respondent.

This case being commenced in justice court it was competent for the plaintiff to plead orally and for the justice to enter the substance merely of the complaint in his docket § 6058 Comp. Laws. When a trial *de novo* is demanded in the circuit court new pleadings are not required and errors and irregularities are to be disregarded. Clow v. Murphy, 3 N. W. 279.

However informal, a verdict is sufficient if the finding of the matter in issue may be concluded from it, and the court can clearly understand it. Hil. on New Trials, 133-134; Pettis v. Bingham, 10 N. H. 514; Leftwich v. Day, 21 N. W. 731.

Where damage is caused by the escape of fire from the engine of a railway company a presumption of negligence on the part of the company arises and casts the burden of proof upon it to show affirmatively that it is not guilty of negligence. Korson v. M. & St. P. R'y, 11 N. W. 122; Woodson v. M. & St. P. R'y, 21 Minn. 60; Silby v. N. P. R'y 21 N. W. 732; Pielke v. C. M. & St. P. R'y 5 Dak. 444. The fact that a witness states that an engine was in good order or carefully or skillfully operated does not conclusively rebut this presumption and a jury is not bound perforce to believe it. Silby v. N. P. R'y Co. 21 N. W. 732; Heming v. W. &. R. R. R. Co., 10 Iredell; Piggott. v. Eastern Counties R'y. 64 Eng. C. L. 233; Haylett, v. P. & R. R'y, 23 Pa. 373. Leaving combustible matter where it is liable to be ignited by sparks from a passing engine is *prima facie* negligence. The leaving the combustible matter upon the right of way where it is liable to be ignited is the proximate cause of the damage where a fire is communicated to an adjoining field.

The ignition of this combustible matter by sparks from a passing engine is not an unavoidable accident. Flynn v. R. . RCo. 40 Cal. 14; Kellogg v. R. R. Co., 26 Wis. 237; Goudy v. R. R. Co., 30 Ia. 420; Proxler v. R. R. Co., 74 N. C. 377; Fent v. R. R. Co, 59 Ill. 349.

BENNETT, J.    This action was brought in a justice's court to recover the value of 30 tons of hay destroyed by fire alleged to have been started on the right of way of the Chicago & Northwestern Railway on the 22d day of October, A. D. 1885, in Brookings county. Plaintiff alleges that the fire was caused by the negligence and carelessness of defendant company in permitting dry and combustible material to gather and remain upon its right of way until ignited by sparks or cinders from the locomotive of a passing freight train going west on said day and that said fire communicated with the dry grass and stubble on lands adjoining the right of way of defendant, and was driven by a strong wind to the stacks of plaintiff which were destroyed. Upon the trial of said cause before the justice of the peace, judgment was rendered against the defendant for $85 and costs. From the judgment the defendant appealed to the district court; and, upon a trial of the cause in the district court, judgment was awarded in favor of plaintiff for $90 and costs. From this judgment an appeal is taken to this court.

The first assignment of error by appellant is that the court erred in admitting evidence when the complaint of plaintiff did not state facts sufficient to constitute a cause of action. In the trial below the defendant demurred to the complaint for the reason as stated above, which demurrer was sustained by the court; and plaintiff asked leave to amend his complaint by alleging the corporate capacity of the defendant, which was granted by the court. This point is stated in the bill of exceptions as follows:    "The issues in this cause, on summons, complaint, and answer, came on for trial to a jury before the Honorable JAMES SPENCER, judge of said court. * * * The plaintiff by his counsel, opened his case to the jury. The plaintiff then, to maintain the issues on his behalf, called as witnesses Robert Stegner. * * * Robert Stegner, being sworn, testi-

fied as follows:    By Mr. Mathews.    Question.    Where do you reside?  By Mr. Brown.    (At this point attorney for defendant objects to evidence under the complaint, as not stating a cause of action.    Objection sustained.    Plaintiff's counsel moved to amend the complaint.    Motion allowed; to which ruling of the court defendant, by counsel, then and there excepted.    Testimony of witness Stegner was then proceeded with; Stegner answering the question above propounded by Mr. Mathews.)" The bill of exceptions also shows that the trial proceeded by the examination and cross-examination of witnesses, both by plaintiff and defendant.    The above is all the record evidence as to the amendment of plaintiff's complaint after the demurrer was interposed and sustained by the court.    It does not show that the amendment was ever made, or the terms imposed by the court complied with by the plaintiff.    The record being silent, and in the absence of a showing to the contrary, we will presume that the court below exercised its discretion correctly and, if an amendment was desirable or necessary, that it was properly made.    A motion was made to amend, but in what particular is not shown.    The motion was allowed, but the record does not say positively that the amendment was made.    The trial proceeding without further objection. it is not a violent presumption that the complaint was amended to show a good cause of action.    The modern rule, and the generally prevailing principle to-day, is that all such amendments shall be made as may be necessary for the purpose of determining the real question or questions in controversy between the parties, and administering justice.    Under the Code, the utmost liberality prevails upon the subject of amendments of pleadings.    The power of a court to allow an amendment of a pleading on a trial is expressly conferred by Section 4938, Comp. Laws, which is as follows:    "The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or, when the

amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." In applying the provision of a Code very similar to our own on amendments, the supreme court of Iowa, in Miller v. Perry, 38 Iowa, 301, says: "Under the statute, it is the rule to allow amendments to pleadings; to refuse is the exception. The right to amend is not an absolute, unconditional one, but is to be allowed in furtherance of justice, under a sound discretion. Amendments, within the limits of the statutes, should always be allowed when substantial justice will be thereby promoted; and they should not be refused so as to operate a denial of justice." No exact rule as to the limit of the right to amend can be stated. Courts have a considerable discretion in the matter. But to this general authority to allow amendments the Code fixes the following restrictions: (1) The proposed amendment must be in furtherance of justice; (2) the privilege of amendment must be allowed on equitable terms; and (3) if the proposed amendment consists in conforming the pleadings to the facts proved, the amendment must be one which will not change substantially the claim or defense. Section 4941, Comp. Laws, says: "The court shall, in every stage of action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." The defendant and appellant fails to show to this court wherein its substantial rights have been affected by any error or defect of the pleadings or proceeding, if any existed, and, having failed to do so, we must hold that the first assignment of error is not well taken.

It must also be borne in mind that the action was commenced in a justice's court, where it is the intent of the law that the practice is to be simplified, to the end that any citizen, with or without any legal attainments or experience, may be enabled to bring his suit, and state his case, without formalities, in an intelligent manner, capable of being understood, without any technicalities surrounding the pleadings or trial of the cause. Pleadings in justice's court are not required to be

in every particular formal, but must be such as to enable a person of common understanding to know what is intended. They may be oral or written. If oral, an entry of their substance must be made in the docket. Section 6058, Comp. Laws. If sufficient before a justice of the peace, it is also sufficient in the appellate court, because the statute does not require that new pleadings shall be filed on appeal when a trial is demanded *de novo*, but all pleadings may stand as they came from the justice. The law requires the case to be tried upon its merits, regardless of any and all irregularities or errors that may appear in the pleadings. In Clow v. Murphy, (Iowa) 3 N. W. Rep. 723, Chief Justice BECK says: "It will be remembered that, upon appeals from justices of the peace, cases are tried *de novo* upon their merits, and all errors, irregularities, and illegalities are to be disregarded. * * * The intent of the statute is to secure justice by a trial of the appeal upon the very merits of the case, without regard to errors or irregularities. If the circuit court may have jurisdiction of the parties and subject-matter of the action, errors and insufficiency of pleading cannot stand in the way. The pleadings may be amended or the errors disregarded, in order to attain the purpose of the statute." It must not, however, be understood that, by holding as we do in this particular case, that we wish to encourage or countenance the loose practice that often prevails in bringing cases from the justice's courts to the circuit, as it would be a much better and more intelligent practice to make pleadings as definite and certain in these cases as when originally brought in the circuit court.

The second assignment of error is that the verdict of the jury is irregular, informal, and insufficient in law, in that its title is not against the defendant company in its corporate capacity. The verdict rendered is in form and words as follows: "J. H. Kelsey v. The C. &. N. W. Ry. Co. We, the jury in the above entitled action, find for the plaintiff on all the issues, and assess his damages at $90.00. W. H. HAWLEY, Foreman." This verdict is certain. It is within the issues, and supports the judgment. The objection is based upon the fact that the

style designates the defendants as "The C. & N. W. Ry. Co."
and is therefore irregular, informal and insufficient. Courts
always disregard verbal inaccuracies in a general verdict, and
will give judgment thereon if the facts found are sufficient, and
the meaning is sufficiently clear. Fenn v. Blanchard, 2 Yates,
543; Trust Co. v. Beville, 100 Ind. 309, 312; Thayer v. Burger,
Id. 262; Daniels v. McGinnis, 97 Ind. 549. The following ver-
dict was held correct both in form and in substance; "Anton
Schindler v. Morrisey Bros. *et al.* In district court, Nebraska.
Verdict for plaintiff. We, the jury duly empaneled and sworn
in the above entitled cause, and to try the issues joined therein,
do find for the plaintiff, and assess his damages at the sum of
$350. [Signed by Foreman.]" Morrissy v. Schindler, 18 Neb.
673, 26 N. W. Rep. 476. In this case, similar to the one now
under consideration, the criticism was upon the title of the
cause. While the court doubted whether counsel could improve
it, yet the court held that all that was necessary was that the
title should identify the cause in which the verdict was ren-
dered. Verdicts are to have a reasonable intendment, and to
receive a reasonable construction. A verdict is good if the title
sufficiently identifies the cause in which it is rendered, and the
findings of the matters submitted in issue may be ascertained
and clearly understood from the wording of it.

The third assignment of error was withdrawn by the appel-
lant, as the alleged fact upon which it was based is not true.

The remaining assignments of error upon the part of appel-
lant present the following questions for consideration, and it is
unnecessary to set them out in full. (1) Was the fire which
destroyed the property of plaintiff on the 22d day of October,
1885, occasioned by sparks emitted from defendant's locomotive
engine, or fire thrown from it? (2) Was the injury caused,
in all probability, the result of the carelessness and negligence
of the defendant? Either of these questions. answered in the
negative, must overturn the judgment rendered in the court be-
low.

First, as the evidence of the origin and continuance of the
fire, and the destruction of the property of the plaintiff. The

evidence establishes conclusively that 30 tons of hay, valued at
$3 per ton, belonging to the plaintiff, were destroyed by fire
on the 22d day of October, 1885, between 11 and 2 o'clock in
the daytime of that day. The evidence also shows that the hay
destroyed was situated on S. W. $\frac{1}{4}$ of section 9, and that
the railroad track of defendant was laid on sections 34 and 33
of the township adjoining on the north so that the nearest
point from the track to the hay was two miles or more. The
evidence also shows that at about dinner-time of that day a
locomotive engine drawing a long freight train passed upon the
defendant's track, going westward, and that at about 10 min-
utes after the passage of the train a small fire was noticed up
by the railroad, which had the appearance of being "right up
near the track," and was "burning right up near the track,"
and appeared to be inside the telegraph poles and the track,
as close as it could get, about five or seven feet from the rail-
road. The wind was blowing quite hard from the northeast,
and the fire, after getting well going, was running southwest.
The fire started about or near the one-mile post west of Au-
rora, at or near the west line of S. W. $\frac{1}{4}$ of section 34, and
on the west side of the section line wagon road, which ran
north and south, near which stood the mile post, on the east
side of this wagon road. This fire continued on in a south-
westerly course. Mr. Smith, a witness for plaintiff, living
about three-fourths of a mile south of Aurora, saw the fire,
and, having hay and some trees nearly in the path of it, went
about one mile south of the track and lit a fire along the wagon
road, burning a patch of ground across the road about 10 or 12
feet wide. The original fire, being further west, passed on,
and continued south and southwest down to the stacks of hay
belonging to the plaintiff, which were destroyed by it. There
was no evidence that the locomotive engine attached to the
freight train was emitting sparks at the time it passed, or that
coals or hot cinders were thrown from it, or that any agent,
employe, or other person working for or engaged by the de-
fendant set the fire. The only proof of the origin of the fire is
purely circumstantial, and rests upon the fact that a fire started

at or near the track within about ten minutes after a freight train had passed. There was no eye-witness to the ignition of the dry grass, by sparks or otherwise, from the defendant's engine, but it is claimed that this circumstance points to and establishes that fact. There being no counter theory offered by defendant, this may be a reasonable inference or presumption, that the fire originated from the sparks or fire of the passing train.

The origin of the fire being determined, was this fire the proximate or immediate cause of plaintiff's loss? The defendant claims not, and asserts that the cause of the loss was the fire "lit along the wagon road" by Smith and that this fire was a sufficient, independent, operating cause between the wrong alleged to have been committed and the injury done. Chief Justice TRIPP, in Pielke v. Railway Co., 5 Dak. 444, 41 N. W. Rep. 669, says: "Proximate cause is that which produces the damage. The remote cause is used, by comparison, as the irresponsible agent which seeks shelter behind the responsible one. The proximate cause is the *vis major* which intervenes and usurps the place of the primary force, or unites with and overcomes it, so as to become the principal and real cause of the damage sustained; or it is the primary cause traced back through intervening and intermediate causes, by natural and continuous succession, from the injury resulting to the wrong committed. The intermissions existing, the time elapsing, or minor cause intervening, do not affect the conclusion so that the original cause be continuously operative as the principal factor in producing the final result." This is a clear and unambiguous definition of a proximate and a remote cause, as comprehensive as is to be found in any of the books. Yet no fixed rule upon the subject can be applied in all cases. Its application must depend upon the circumstances of each case.

A careful analysis of the evidence in the case at bar shows that the fire started at or near the railroad track, going in a southwesterly direction. The witness who first discovered it says he followed it for about 1¾ miles from the road, and he saw that fire burn up some stacks of hay. Smith, another witness,

saw this fire burn up the hay.    Mr. Kelsey, the plaintiff, got to
his stacks just as the fire struck them, and it burned them up.
But defendant insists that the fire started by Smith intervened,
and became the proximate cause of the injury.    We think not.
The evidence upon this point is as follows:    The witness Smith
testified:    "I went on, within not quite a mile south of the rail-
road, to my northwest corner of the land.    There was a small
place there where the fire would run into some trees and my
hay. I got on my horse 'and went over there, and lit a fire right
along the road; and I had time to burn that, to keep the fire
off from me, with Mr. Stegner's help.    He helped me burn this
patch off, about ten or twelve feet across the road."    Upon
cross-examination the following questions were propounded,
and answers given:    Question.    Where did you meet the fire
when you came out?    Answer.    Oh! the fire, when I got there,
was nearly down to my north line, only further west from me.
Q.    Hadn't come on your farm?    A.    No, sir.    Q.    It was trav-
eling south, and north of your farm?    A.    Yes; it was still
traveling south, but burning on both sides of the line where it
was burned.    Q.    What were you trying to protect?    A.    There
was some plowing just across the road, and the fire was west.
So before it got to me I had a chance to back fire a little strip
to keep it up off of me.    There is a strip of plowing out west
that the fire went past, and the rest of it had to go and back up
to me.    *    *    *    ·Q.    Now, after you had set this fire and
burned this strip, what did you do?    A.    After this other fire
came in, the strip of plowing on the east side there, I should
judge, was 20 feet wide; and Stegner and I went along up, so
it wouldn't come across the piece of plowing, and watched till
this fire from the west had backed up to us, and then we went
on down to the lower corner, for fear it would run in there, but
it didn't.    It went on down and west of another piece of plowing
that was on the quarter south of where Mr. Stegner was living
and then went on down to this hay, and set it on fire."    From
this uncontradicted evidence, it is clear that the fire which
started at ·the railroad track, by a natural and continuous suc-
cession, operating upon intervening and intermediate causes,

produced the final result and injury in the case. The fire started by Smith had no connection with this one, either proximate or remote.

Having thus determined that the fire originally starting at the railroad track by the locomotive engine of the defendant was the primary or proximate cause of the destruction of the plaintiff's hay, the only remaining question for determination is, was defendant guilty of negligence in starting the fire? If a damaging fire is shown to have been propagated by sparks or fire from a locomotive engine of a passing railroad train of a chartered company, does such proof raise a presumption of negligence, so as to cast the burden of proof upon the defendant of showing that the locomotive engine was properly constructed and managed? Upon this proposition there is a clear and decided conflict of authority. The rule of the English courts and of many of the American states is that the burden of making this proof rests upon the company. Aldridge v. Railway Co., 3 Man. & G. 515; Piggott v. Railway Co., 3 Man., G. & S. 229; Gibson v. Railway Co., 1 Fost. & F. 23; Smith v. Railway Co., L. R. 6 C. P. 14; Ellis v. Railroad Co., 2 Ired. 138; Herring v. Railroad Co., 10 Ired. 402; Huyett v. Railroad Co., 23 Pa. St. 373; Hull v. Railroad Co., 14 Cal. 387; Bass v. Railroad Co., 28 Ill. 9; Railroad Co. v. Mills, 42 Ill. 407; McCready v. Railroad Co., 2 Strob. 356; Cleaveland v. Railroad Co., 42 Vt. 449; Railroad Co. v. Woodruff, 4 Md. 242; Railroad Co. v. Westover, 4 Neb. 268; Longabaugh v. Railroad Co., 9 Nev. 271; Anderson v. Steam-Boat Co., 64 N. C. 399; Aycock v. Railroad Co., 89 N. C. 321; Burke v. Railroad Co., 7 Heisk. 451; Simpson v. Railroad Co., 5 Lea. 456; Anderson v. Railroad Co., 2 Utah, 518; Spaulding v. Railway Co., 30 Wis. 110; Galpin v. Railroad Co., 19 Wis. 604; Kellogg v. Railway Co., 26 Wis. 223. The reasons in support of this rule are well stated, among others, in the case of Railroad Co. v. Mills, above cited. The law upon the subject is that the companies, in the construction of their engines, are bound not only to employ all due care and skill for the prevention of mischief arising to the property of others by the emission of sparks or any other cause, but they are also bound to

avail themselves of all discoveries which science has put within their reach for that purpose, provided they are such as, under the circumstances, it is reasonable to require the compannies to adopt. The reason for requiring the companies to show that this duty has been performed on their part in that the agents and employes of the road know, or are at least bound to know, that the engine is properly equipped to prevent fire escaping, and that they know whether any mechanical contrivances were employed for that purpose, and, if so, what was their character; while, on the other hand, persons not so connected with the road, and who only see trains passing at a high rate of speed, have no such means of information, and the same is inaccessible to, and cannot be obtained by, them without great trouble and expense, and then often only as a favor from the company, which, under the circumstances, the company would be very likely to withhold. These considerations seem to us to afford very clear and satisfactory grounds in support of this rule, which will be adopted by us. The authorities in opposition to this rule are, it is admitted, quite numerous, and by the highest and most respectable judicial tribunals; but, inasmuch as reference may be had to them from any elementary work on Negligence, or to the English and American Railway Cases of recent date, no further allusion will be made to them here.

Recognizing this rule, the defendant in the trial of this cause below assumed this burden of proof after the plaintiff had rested and introduced testimony to prove that the engine from which the fire was supposed to have originated was run with care, and was under the management of skilled and experienced operatives, and that it was supplied with all modern appliances and appurtenances to prevent the escape of sparks or fire, and was properly constructed. Upon these facts there seems to have been no dispute. The plaintiff, by proving that the defendant's locomotive engine had set fire to dry grass or other combustible matter along its road-bed, made a *prima facie* case of negligence; and, had defendant failed to introduce any proof, the plaintiff would have been entitled to a verdict in his favor under the direction of the court. But the defendant did intro-

duce its employes who were engaged in running the train at the time, and the master mechanic having charge of the repairs of the engines of the road for that division, who testified that this particular engine was in good order, and had the modern appliances attached to it to prevent the emission of sparks and the dropping of live coals of fire, and that the engine was run with the usual care and caution at the time the fire started. This evidence rebutted the presumption raised by the plaintiffs' proof; and, had there been no other evidence of negligence, the defendant would have been entitled to a verdict from the jury under the direction of the court.

Evidence was introduced by plaintiff tending to prove that defendant had allowed its right of way to accumulate a quantity of dry grass, which at that season of the year was liable, if a small live spark came in contact with it, to become ignited, and this burning grass, with other dry grasses and stubble or other combustible matter near it, with the aid of the wind, might become an extensive and destructive fire. By some authorities this is held to be a presumption of negligence upon the part of the railroad company. Smith v. Railway Co., L. R. 6 C. P. 14; Vaughan v. Railway Co., 5 Hurl, & N. 678, 1 Thomp. Neg. 122; Longabaugh v. Railroad Co., 9 Nev. 271; Salmon v. Railroad Co., 38 N. J. Law, 5; Troxler v Railroad Co., 74 N. C. 377; Aycock v. Railroad Co., 89 N. C.321. In a long line of decisions in nearly all the states, it is held to be at least evidence of negligence to be considered by the jury. The evidence upon this point introduced by the plaintiff was controverted by the defendant, and it by no means is clear and undisputed. It was as follows: Orson Rexford, a witness called by plaintiff, says he lived about 80 rods from where the fire originated, and had a patch of potatoes right down by the side of the track; and the day before the fire he had been digging them, and he noticed that the grass was long there, and grown up, and that it had not been burned off. It was dry,—old dry grass; frost-killed, dead grass. John Ognisky, another witness for plaintiff, says he was working for the defendant company at the time of the fire; that the right of way east of the wagon road

to Aurora had been well burned off, but west of the wagon road it was burned but little. It was different grass there, and was endeavored to be burned too early, and there was considerable grass left. About 50 feet from the track it was all dry grass. Mr. Kwartz, a section foreman of the defendant at the time of the fire, says that a couple of weeks before the fire he burned the right of way all along where it is alleged the fire originated, and burned it all over, clean, 150 feet from the track. Thus it will be seen that there was a substantial conflict of testimony on this point, which, being relevant and material to the issues, was properly left to the jury for determination, and a verdict rendered in favor of plaintiff. In accordance with the rule so frequently announced, that, where there is a substantial conflict in the evidence, this court will not disturb the decision of the court, we will not set aside the verdict in this case. No vital errors appearing, the judgment will be affirmed.