## WHITE v. CHICAGO, M. & ST. P. R'Y CO.

1. In an action for negligence, where buildings, trees, or crops are destroyed or injured by fire, the proper measure of damages is not the difference in the value of the land upon which they are situated before and after injury, but of the value of the buildings, trees, etc., themselves.

2. In an action for damages for injuries caused by sparks, etc., from a locomotive, the plaintiff must not only prove that the fire might have proceeded from the defendant's locomotive, but must show by reasonable affirmative evidence that it did so originate. It is not necessary, however, to prove this beyond a reasonable doubt.

3. If in the necessary use of fire for the production of steam, by the usual and best approved appliances, without negligence, sparks escape from a locomotive engine, and set on fire the premises of adjacent owners of property, such loss must be borne by the owner as one of the incidents of the operation of railroads.

4. After it is shown that a fire originated from sparks or cinders of a locomotive, the burden of proof of establishing the fact that the railroad company used the most improved appliances, which had been tested and found practicable at the time, is upon the company.

(Syllabus by the court. Argued April 3, 1890. Opinion filed Nov. 24, 1890.)

Appeal from district court, Moody county. Hon. LOUIS W. CROFOOT, Judge.

Action for damages for the destruction of a dwelling house by fire alleged to have been started by sparks escaping from the engine of defendant. Judgment for plaintiff. Defendant appeals.

The facts are stated in the opinion.

*John T. Fish* and *Winsor* and *Kittridge,* (*H. H. Field,* of counsel) for appellant.

This action was brought to recover damages for personal property destroyed. The property in fact was a building and was a part of the real estate upon which it was located. The action was therefore improperly brought and further it was error to admit evidence as to damages other than as to what was the difference in value between the property before the injury and after the injury.

A railroad company is not liable for a loss by fire occasioned by sparks escaping from a passing engine if the same occurs without negligence and while the company is using the usual and best approved appliances. Hannaher v. Railroad, 37 N. W. 722; Spaulding v. Railroad, 30 Wis. 110; Volkman v. Railroad, 37 N. W. 731. Under the rule in these cases the court should have directed a verdict for defendant, there being an utter failure of any evidence of negligence on the part of defendant. An admission made by an employe or agent after a transaction cannot be introduced as evidence against his principal, and the evidence of the witnesses as to repairs made upon the engine subsequently to the fire should have been excluded and the jury instructed that from it they were not at liberty to infer that the engine was out of repair at the time of the fire. Hudson v. Railroad, 11 N. W. 735; Kramer v. Burlington, 45 Ia. 627; Swetland v. Telegraph Co. 27 Ia. 434; Bank of Canton v. North, 41 N. W. 737.

*Rice Brothers,* for respondent.

When buildings are destroyed by fire the proper measure of damages is not the difference in the value of the land before and after injury, but is the value of the buildings when destroyed. 2 Thompson on Neg. 1262; Burke v. Railroad, 7 Heisk, 451; Whitebeck v. Railroad, 36 Barb. 644; Railroad v. Salmon, 39 N. J. L. 316; Atkinson v. Railroad, 63 Mo. 367; Cleland. v. Thornton, 43 Cal. 437. The question of negligence is one of fact for the jury, and having been passed upon by the jury the verdict will not be disturbed. Moline Plow Co. v. Gilbert, 3 Dak. 239; French v. Lancaster, 9 N. W. 716; Can

field v. Boyles, 11 N. W. 511; Whiting v. Railroad, 5 Dak. 90; Railroad v. Stout, 17 Wall. 657; Railroad v. Kane, 6 At. 845; Bennett v. Ins. Co. 39 N. W. 488; Railroad v. Wolson, 15 N. E. 824. There was sufficient evidence of negligence on the part of defendant to warrant the jury in so finding. Dean v. Railroad, 40 N. W. 270; Hoffman v. Railroad, 41 N. W. 301; Alpena v. Churchill, 19 N. W. 549; Brusberg v. Railroad, 12 N. W. 416.

BENNETT, J. The complaint alleges that plaintiff was, on and prior to the 10th day of October, 1885, the owner of, and in possession of, a farm house, valued at $250, situated on the N. ½ of the N. W. ¼ of section 25, township 107, and range 48, in Moody county, and that on that day the defendant so negligently managed its locomotives and engines on its road, and that they were so defective, that sparks escaped and set fire to the prairie adjacent to the premises of the plaintiff, which spread to and destroyed said dwelling house, damaging him in the sum of $260. The answer of the defendant is, in substance, a general denial. The cause was tried by a jury. A general verdict and several special verdicts were rendered. Exceptions to several of the special verdicts were taken by the defendant. A motion for a new trial upon a bill of exceptions was filed and heard, and denied by the court. Judgment rendered for the plaintiff, and an appeal taken.

The first exception or assignment of error is to the overruling by the court of defendant's objection to the question, "What was your intention to do with the house?" The plaintiff had testified that he was the owner of the house and land situated as described in the complaint. The question was then asked him, "What was your intention to do with the house?" and the answer was, "I probably would have moved it, because I sold the land, all but the eighty it was on. I should have moved it from there, probably. I bought a house and lot here, and I could put it on that lot or two lots up here, if I wanted to. The value of the house was somewhere from $250 to $300, and it was burned up on the 10th day of October." It may be true that the competency of the above testimony as to what

plaintiff was intending to do with the house may be questioned; yet, if its admission has not resulted in any harm to the party objecting a reversal on that ground will not be granted. The nature of the property, its ownership, or its value was not disputed; neither what the plaintiff would do with the property if it had not been destroyed. The answer to the question could have no influence on the result, and the finding of the jury would have been the same if it had been excluded. The appellant in his brief endeavors to point out the difference in the measure of damages between real and personal property. His contention may be well taken when a cause involving that distinction arises, which is not the fact in the case under consideration. The fact of the ownership of the house gave the plaintiff the right of recovery, and not the fact as to whether it was real or personal property, or as to what plaintiff intended to do with it. "For the purposes of actions for injuries through negligence, many things which are attached to the realty, and a part of it, such as fruit trees, houses, timber, etc., are considered separate and distinct from it because they have a value which is distinct from the value of the land. Therefore, where buildings, trees, crops, etc., are destroyed or injured, the proper measure of damages is not the difference in the value of the land before and after injury, but of the buildings, trees, etc., themselves; and where buildings are destroyed by fire, the proper measure of damages is the value of the buildings when destroyed." 2 Thomp. Neg. 1262; Burke v. Railroad Co., 7 Heisk. 451; Railroad Co. v. Salmon, 39 N. J. Law, 316; Atkinson v. Railroad Co., 63 Mo. 367; Cleland v. Thornton, 43 Cal. 437: Freeland v. Muscatine, 9 Iowa, 461.

It is contended by the defendant that the finding of the jury is not warranted by the evidence. This contention is embodied in the third, fourth, and tenth assignments of error, and upon these we shall make a general review of the case, as upon these, in great part, this appeal depends. These are as follows: "(3) That the court erred in not sustaining defendant's motion to direct a verdict for the defendant at the close of the testimony introduced by the plaintiff. (4) That the

court erred in not sustaining defendant's motion to instruct the jury to return a verdict for the defendant at the close of the entire testimony.    (10) · That the court erred in not granting defendant's motion for a new trial. "

An analysis of plaintiff's testimony when he rested his case shows that on the 10th day of October, 1885, he owned the dwelling-house, as described in the complaint; that a locomotive and train of cars belonging to defendant passed, about 12 o'clock of that day, on defendant's road; that in going up a grade in the road near the plaintiff's house the locomotive was laboring very hard, and emitting a large number of sparks; that no fire was seen previous to the passage of the train; that soon after it passed the prairie grass immediately adjacent to the track was seen to be on fire, which ran to and burned down and destroyed the dwelling-house aforesaid; and that it was worth from $250 to $300.

In an action for damages upon injuries caused by sparks, etc., from a locomotive, the plaintiff must not only prove that the fire might have preceeded from the defendant's locomotive, but must show, by reasonable affirmative evidence, that it did so originate.    It is not necessary, however, to prove this beyond a reasonable doubt.    Evidence showing that the engine emit- ted sparks in size and number sufficient to account for the fire, and flying near the building or field actually caught fire, and that the fire was discovered very soon afterwards, no other cause being known, is sufficient to go to the jury, to show that the fire originated from the passing locomotive.    Kenney v. Railroad Co., 70 Mo. 243, 80 Mo. 573; Sheldon v. Railroad Co., 14 N. Y. 218.    As was held in the case of Kelsey v. Railway Co., 45 N. W. Rep. 204, by this court, the decided weight of authority and of reason is in favor of holding that, the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used all those precautions for confining sparks or cinders, so as to prevent the ignition of fire to surrounding combustible matter.    The authorities were very generally collated in the above-mentioned case to sustain this

proposition, and need not be repeated here. Such being the facts and the law governing them as the case stood at the close of plaintiff's testimony, there was no error in not directing a verdict for defendant at that time.

We now come to the defendant's side of the case. The rule in this state has been laid down by Chief Justice TRIPP in Hannaher v. Railway Co., 37 N. W. Rep. 722, to be as follows: "It has now become the settled law of this country and of England that the right of way obtained in every character permits railroads to use steam-engines in propelling their trains; and that if, in the necessary use of fire for the production of steam for such purposes, by the usual and best approved appliances, without negligence, sparks escape, and set on fire the premises of adjacent owners of property, such loss must be borne by the owners as one of the incidents of the operation of railroads." See, also, Spaulding v. Railway Co., 30 Wis. 110, 33 Wis. 582; Read v. Morse, 34 Wis. 315; Hoff v. Railroad Co., 13 Amer. & Eng. Ry. Cas. 476. The law does not require that engines shall be so constructed, equipped, or managed that the escape of sparks is impossible; and, although a fire may originate from a spark or cinder from a railroad locomotive, yet that, of itself, does not render the defendant liable, but it can only be held liable in case it appears by the evidence that there was negligence on the part of defendant in respect to the condition or the handling or management of its engines. A railway company is not liable, nor would any other person be liable, from the mere fact of the setting of the fire. Negligence in some way on the part of the company or any other person is necessary in order to form the basis of the liability for damages which occur; because fire may be used carefully and prudently by a railway company, or by any other person, and in that case, if it escapes by some unforeseen and uncontrollable circumstance, the railway company or other person using it is not liable. Railroads have the lawful right to use upon their right of way steam in propelling their trains. Steam can only be produced by the use of fire. That being so it is only necessary that it shall be used in such a way as shall, as far as

practicable, prevent its escape, and so used with due regard to
the rights of others that they may not suffer.   It is therefore
necessary that a railroad company, to prevent the escape of
sparks, shall use the most improved appliances, which have
been tested and found practicable.   If they adopt such contriv-
ances on their engines, and their engines are skilfully and
carefully managed, and fire escapes from an engine notwith-
standing such contrivances and appliances, and sets fire to adjoin-
ing property, the company is not liable.   But the burden of proof
of establishing these facts, after it is shown that a fire originated
from sparks or cinders of a locomotive, is upon the company.
It has been presumptively shown that the fire which caused
the damage in the case in hand originated from sparks or a
cinder from defendant's locomotive.   This raises in favor of
plaintiff a presumptive case of negligence, and entitles him to
recover, unless this presumption can be rebutted by the defend-
ant, by showing that this locomotive was not in a defective
condition and was not unskillfully handled.   The engineer and
fireman who had charge of the locomotive on the day in ques-
tion have both testified as to the manner in which the engine
was being run at the time the fire is alleged to have been set.
The engineer testified that he had run this locomotive about
fifteen months.   Its general condition was good.   It steamed
splendidly; it was an easy steamer, and he was working it
about eight inches and a light throttle.   The full extent of a
quadrant would be twenty-four inches.   At the time it was
passing where the fire is said to have originated, it was not
laboring hard, nor throwing any unusual amount of fire, and
had not been doing so on that day.   The fireman was a good
one, and was firing light, with about four inches of fire.   There
was nothing in the way of handling the engine or fire that
tended to increase the escape of sparks or cinders.   Was draw-
ing fifteen cars.   The full grade of that train was sixteen cars.
The engine was run with the forward damper closed and the
rear damper open.   With the rear damper open, the draft
passes through damper towards the smoke-stack, so that the
effect of the draft is all the time towards the smoke-stack   The

engineer and fireman were shown to be experts and competent men for their respective duties.    This testimony was corroborated by the fireman.    This was all the material evidence as to the running and management of the locomotive.    Now, as to the condition of it.    The engine was at the round-house, at Woonsocket on the 7th and 8th days of October, 1885, and the smoke-stack was examined, and a couple of the wires belonging to the netting were found to be worn in two, and were wired down, and a patch put on.    The patch was about a foot long and eight inches wide.    The engine came back on the 11th, and the same patch was on, and in good condition.    The old netting was not taken out when the patch was put on, but the patch was fastened to it.    On the 15th the stack was taken off, and a new one was put on, and at the time of taking off the stack the netting appeared to be good.    It was not worn out, nor was it used again.    The meshes or holes in the netting would be about three-sixteenths of an inch in size.    The engine was equipped with what is called a "diamond stack," manufactured by Danforth & Cook.    The dimensions of the cylinder were sixteen inches in diameter and twenty-four inch stroke, and it was what is called an "ordinary" engine.    The netting was $3\frac{1}{2}$x$3\frac{1}{2}$, No. 12 wire, and is the standard netting for diamond stack engines, and was such as was in the engine on the day of the fire, and was the kind in general use at the time. Experience has demonstrated that finer netting in a smoke-stack will operate to prevent the free steaming of a locomotive; it operates upon the draft, and if a coarser netting than that is used in a stack, it is liable to allow larger cinders to escape. The netting bears directly upon the draft and the escape of sparks.    Very explicit and detailed testimony was introduced by the defendant, showing the condition of the smoke stack, size and length of flues, the action of sparks upon the netting, and the effect of the draft upon the sparks and cinders, and the general condition of the engine, and that the engine had been repaired the June previous, at an expense of $1,081.

The evidence clearly indicates that this engine was an old one, and had been extensively repaired, but that it was in ap-

parent good condition, with the exception of the smoke-stack, or the netting in it. It is shown that on the 7th or 8th day of October a hole was in the netting. and that a patch had been put over it. There is no evidence that this patch did rot become loose between the 9th and 10th. There can be but little doubt that this engine set this fire by a spark or cinder emitted through the smoke-stack. So whatever testimony was introduced as to the other parts of the engine being in good condition need not be considered. The question of negligence is confined to the smoke-stack and netting. O. Henan, a witness for plaintiff, testified that when he got to where the fire started he found a piece of live coal outside of the fire-break. It was a large chunk of coal, about an inch in diameter and three-fourths inch in thickness. The witnesses for defendant says it would have been impossible for a piece of coal of that size to have been thrown from the smoke stack under any circumstances, with the netting in good condition. The fire occurred on the 10th of October. There is no evidence that this patch did not become loose between the 9th and the 11th. The engine was examined on the 11th, and the patch was there. Why the defendant did not show the patch was on in good shape, and the netting all right, on the 10th is unexplained. It is an uncontroverted fact that sparks were freely emitted from the smoke-stack on the day of the fire; and that one of them, corresponding with the hole in the netting, was found, is a circumstance showing that the patch might have become loose, and one which the jury may have considered in rendering their verdict. The best that can be said of the condition of the engine, and of its being equipped with the best of appliances on the day of the fire, is that it was doubtful as to both its condition and its equipments. The court did not err in refusing to direct a verdict for defendant at the close of the whole testimony.

The fifth assignment of error is to the refusal of the court to give the following instructions: "You are instructed that the fact that the engine in question, No. 356, was changed by replacing the netting and stack when it was at Wells, on the

15th or 16th of October, 1885, after the fire in question, is not a matter from which you are at liberty to infer that it was out of repair or imperfect at the time the fire in question was set." The record shows that the defendant's witness Hoben-stein testified without objection that this engine came into Wells on the 15th day of October, 1885, and that he took off the old smoke stack and put on a new one. The new smoke-stack had new netting. For what purpose the defendant introduced the evidence is not shown; yet this is the record. If this fact was prejudicial to defendant in any way, it should not have introduced it; or if it came in incidentally, or to the sur-prise, or against the wish, of defendant. it should have had it stricken out at the time. There can be no doubt that it was proper for the jury to give such weight to the testimony of the change of the smoke-stack, made so soon after the fire, as they should deem it entitled to, and they might consider the fact as a circumstance in determining whether the engine was in proper condition or not on the day of the fire. This instruc-tion was not improperly refused.

The sixth, seventh, and eighth assignments of error are in the refusal of the court to set aside special verdicts, 3, 6 and 7, for want of evidence to sustain them. These special verdicts are as follows: "(3) If you say that said fire was set by said piece of coke escaping from said engine, then state from what part of said engine said piece of coke escaped. Answer, Smoke-stack." "(6) If you say that said engine was not in good repair, then state where and in what respect said engine was out of repair. A. Smoke-stack and wheels. (7) Were there any other holes in said netting at said time, except the one covered by the patch and those made by the meshes of the wire? A. Yes, we think there was.

The jury found that the fire was set by the piece of coal found by O. Henan, and that the piece of coal was about one inch long and three fourths inch thick. The train was going up a grade, and sparks flying from the smoke-stack. There was no fire previous to the train passing, but shortly afterwards the fire broke out, and this live piece of coal was found ten or fifteen

feet outside of the fire break. One of the bases of evidence is "the known and experienced connection subsisting between collateral facts or circumstances, satisfactorily proved, and the fact in controversy," 1 Greenl. Ev. 18. It is recognized even in criminal prosecutions, as in the case of the possession of goods recently stolen, accompanied with personal proximity in point of time and place, and the inability of the possessor to show how he came by them. These facts warrant the inference that the possessor stole them. They are *prima facie* evidence of guilty possession. Upon an indictment for arson, proof that property which was in the house at the time it was burned was soon afterwards found in the possession of the prisoner was held to raise a probable presumption that he was present, and concurred in the offense. From the facts established, the unknown fact is deduced, and is by the law presumed; and if the facts found from which the fact is presumed be unexplained, either by direct evidence or by attending circumstances, it is taken as conclusive. If a locomotive engine passed through plaintiff's field or near his house, and in doing so was obliged to go up a grade, and sparks were seen emitting from the top of the smoke-stack in large quantities, no fire seen previous to the passage of the train, but immediately afterwards a fire breaks out, and a live piece of coal is found near where the fire originated, and around which the grass and combustible matter was burned, would a court be justified in declaring that there was no evidence to say that that piece of coal came from the smoke-stack? If so, courts could say that one found in possession of goods recently stolen was not presumably guilty. "The true question in trials of fact is not whether it is possible that the testimony may be false, but whether there is sufficient probability of its truth; that is, whether the facts are shown by competent and satisfactory evidence. * * * By satisfactory evidence, which is sometimes called 'sufficient evidence,' is intended that amount of proof which ordinarily satisfies an unprejudiced mind." Id. 4. The same principle applies to the sufficiency of the evidence in relation to the condition and repair of the smoke stack. The

evidence shows that the netting on the day or two previous to the fire was·broken, and a large hole was in it; that a patch had been put on over this hole; and that it was an old stack; so much so, that on the fifth day after the fire it was taken off, and the netting thrown away as worthless. It is true that other testimony was introduced tending to show that it was in good condition on the day of the fire, but both the testimony and circumstances were of such a nature that a jury could have found very reasonably as they did, and in doing so have violated no rules of evidence or reason.

A great deal of the evidence was rebutted by other evidence of the highest character and respectability, and perhaps in some of the points raised the weight of it was with the defendant; but the jury found against the defendant on this conflicting evidence. So long, therefore, as cases are submitted to juries, so long some respect must be given to their verdicts; and when the court below has sustained the verdict of the jury, as in this case, such action of the court adds force and weight to it. The judgment of the court below must be affirmed. All the judges concurring.