## CRONK v. CHICAGO, M. & ST. P. RY. CO.

1. In an action against a railway company for negligently causing a fire which destroyed plaintiff's property the degree of carefulness required of the company to avoid liability depends upon circumstances. The care should be commensurate with the danger, but, whether the care so required is slight or extreme, it is "ordinary care;" for "ordinary care" is that degree of care which a person of ordinary prudence would exercise under the particular circumstances of the case.
2. So that a special question submitted to the jury in such case, as to whether defendant company managed its locomotive "with ordinary care and prudence" on the occasion of the fire, presented the whole subject of the company's duty in the handling of its locomotive, whether the care required was usual or unusual.
3. When the actionable negligence is alleged to consist in the use of defective appliances, or in the careless handling of its locomotive, a *prima facie* case is made by the fact of the fire, because the fact of the fire starts a presumption of negligence; but such presumption is rebuttable, and, where the evidence in rebuttal is clearly and satisfactorily against such presumption, it must be held to be overcome.
4. When, in such case, there is no evidence whatever of actual negligence, a verdict finding negligence is unsupported by evidence, and must be set aside.

(Syllabus by the Court.  Opinion filed June 2, 1892.)

Appeal from circuit court, Moody county.

Action for damages to property by fire negligently caused by defendant. Judgment for plaintiff. Defendant appeals. Reversed.

The facts are stated in the opinion.

*Winsor & Kittredge,* for appellant.

Evidence that the engine was in good order, had modern appliances to prevent sparks and was run with usual care, rebuts the presumption raised by the fire having been set by it.   Kelsey v.

Railroad, 46 N. W. 207; White v. *Id.* 47 N. W. 146; Railroad v. Anderson, 20 Mich. 244; Johnson v. Railroad, 48 N. W. 227.

The witnesses all agree that on the day on which the fire complained of occurred, that it was very windy and very dry. Under such circumstances the greatest degree of care possible was necessary on the part of defendant. Tero v. Railroad, 22 N. Y. 209; Johnson v. Railroad, 16 N. W. 488; Sheldon v. Railroad, 4 Kern, 218; Ross v. Railroad, 6 Allen, 87; Railroad v. Chase, 11 Can. 47.

Under the evidence the question of negligence was one for the jury. Lincoln v. Gillilan, 18 Neb. 114; Railroad v. Schultz, 93 Pa. St. 341; Karson. v. Railroad, 11 N. W. 122; Brusberg v. Railroad, 12 N. W. 416; Sibley v. Railroad, 21 N. W. 732.

*Joe Kirby* and *Rice Brothers*, for respondent.

A party cannot claim error of the trial court in refusing to excuse a juror for cause, no matter what state of mind or prejudice exists, unless he has, at the time that the jury is sworn to try the case, exhausted his right of peremptory challenge. People v. McGengill, 41 Cal. 429; Hayne, New Trial & App. § 43; Harbert v. Railroad, 3 Dak. 38; State v. Elliott, 45 Iowa, 486; Barnes v. Newton, 46 Iowa, 567; Sharp v. State, 6 Tex. App. 650; Palmer v. People, 4 Neb. 68; State v. Gill, S. C. 410; Erwin v. State, 29 Ohio, St. 186; State v. Hoyte, 47 Conn. 518.

To entitle a party to a judgment on a special verdict against a general one in favor of the other party the special verdict must be inconsistent with the general one, and must, when taken together with the facts admitted by the pleadings, cover all the issues and be sufficient to establish or defeat the right to recover. Hamlin v. Branner, 25 Iowa, 364; Lamb v. Marshalltown, 20 Iowa, 127; Bills v. Ottumwa, 35 Iowa, 107. Special findings must be liberally construed with the view of sustaining the general verdict if possible. 2 Thomp. on Trials, § 2654; Picket v. Richet, 2 Bibb. 178; Leftwich v. Day, 32 Minn. 512; Railroad v. Clifford, 15 N. E. 524; Railroad v. Ortrander, *Id.* 227; Caladonia v. Moonan, 3 Dak. 189; Golden Terra v. Smith, 2 Dak. 377.

KELLAM, P. J. This action was brought by plaintiff to recover damages resulting from a fire alleged to have been set out by the negligence of defendant. The allegation of the complaint

charging negligence was as follows: "That said defendant, on or about said 10th day of October, 1885, in Moody county, Dakota, by its agents and servants, not regarding its duty in that respect, so negligently and carelessly ran and managed its said locomotives and engines on its said road, and the same were so defective, that firebrands and sparks escaped therefrom in such quantities that they set fire to the prairie grass on the land adjacent to the premises of this plaintiff, which fire, spreading to the plaintiff's premises, set fire to and destroyed the property hereinbefore mentioned, to plaintiff's great damage," etc. The answer to the allegation of negligence was a general denial. Thus the negligence charged against defendant is (1) that it negligently and carelessly handled and managed its locomotive; and (2) that the locomotive itself was so defective as to allow firebrands and sparks to escape in dangerous quantities.

The case was tried to a jury which was instructed by the court to find and return answers to particular questions of fact. The questions, with the answers so found and returned, were as follows: "Question 1. Did the fire which destroyed the plaintiff's property originate from defendant's engine 356? Answer. Yes. Q. 2. Was said engine at the time of said fire equipped with approved appliances to prevent the escape of fire? A. Yes. Q. 3. Were there any holes in the netting of said engine larger than those made by the meshes of the wire, except the place covered by the patch. A. No. Q. 4. Was the patch on said netting in good condition, and fastened close and tight to the netting? A. Yes. Q. 5. Were the ash pan, dampers, and other portions of said engine in good condition at the time of said fire? A. Yes. Q. 6. If you find that any portion of said engine was out of repair at the time of said fire, state what it was. A. We find none. Q. 7. Were the engineer and fireman in charge of said engine prudent and competent persons to perform their duty? A. Yes. Q. 8. Did the engineer and fireman handle and operate said engine with ordinary care and prudence at the time? A. No. Q. 9. By plaintiff: Was the engine No. 356 in good condition on October 10, 1885, at the time it is claimed the fire was set? A. Yes." With these special questions and an-

swers the jury returned a general verdict for plaintiff. Defend-
ant moved to set aside the answer to the eighth question, and for
judgment notwithstanding the general verdict, for the reason that
there was no substantial evidence to support said answer. This
motion was denied. Afterwards defendant made a motion for a
new trial upon the ground, among others, that the evidence was
insufficient to support the answer of the jury to said eighth ques-
tion, by which the jury found and returned that the engineer and
fireman did not handle and operate the engine with ordinary care
and prudence at the time. This motion was overruled, and judg-
ment entered in favor of plaintiff. From such judgment this ap-
peal is taken.

One of the errors assigned and the one principally relied upon
by the appellant is the refusal of the court to set aside the answer
to said question No. 8, as unsupported by the evidence, and to ren-
der judgment for defendant notwithstanding the general verdict
for plaintiff. Respondent maintains "that to entitle a party to a
judgment on a special verdict against a general one in favor of the
other party the special verdicts must be inconsistent with the
general one, and must of themselves, or when taken together with
the facts admitted by the pleadings, cover all the issues, and be
sufficient to establish or defeat, as the case may be, the right to
recover," and under the shadow of such general proposition in-
sists that, inasmuch as the special questions do not cover all the
issues, the general verdict must stand. If by the term "all the
issues" respondent means all the issues raised by the pleadings,
the proposition is clearly untenable. One of the issues in this case
made by defendant's answer was the ownership of the property
alleged to have been destroyed, but of course it was not necessary
that the jury should find that the plaintiff was or was not the
owner in order to entitle defendant to a judgment if they found
there was no negligence on its part, for without negligence it
would not be liable no matter who owned the property. None
of the cases cited by respondent require that such answers must
necessarily cover "all the issues" in order to make them control
the general verdict. Section 5061, Comp. Laws, covers and rules
this whole subjest: "Where a special finding of facts is inconsist-

ent with the general verdict, the former controls the latter, and the court must give judgment accordingly." So that, if the jury had found and returned as a fact that there was no negligence on the part of the defendant company, such finding would have controlled the general verdict against it, for it would have been fatally inconsistent with it.

As already noticed, two distinct conditions or acts of negligence on the part of appellant are alleged as the cause of this fire and resulting damage,—defect in the locomotive, and want of care in the management of it. As to the first,—the condition of the locomotive,—the jury found for the defendant, and negatived the allegation of the complaint that the locomotive was defective; so that the verdict must stand, if at all, upon the evidence tending to show negligence in its management. Respondent contends that, all the other questions submitted being determined by the jury in favor of appellant, still its liability did not depend upon the answer to question No. 8, which was whether the locomotive was handled with "ordinary care and prudence," for the reason that, the day being very windy, more was required of the company than the exercise of "ordinary care and prudence," and that, therefore, even if the jury had found and answered that the locomotive was managed with "ordinary care and prudence," the special findings would not then be inconsistent with the general verdict; for it might rest upon the judgment of the jury that the company had failed to exercise the extraordinary "care and prudence" required by the circumstances. The force of this suggestion depends upon the meaning of the expression "ordinary care and prudence." The argument of appellant assumes it to mean only average or usual care, without regard to circumstances, but we think the expression has usually been taken by the courts to mean that degree of care which a person of ordinary prudence would exercise under the particular circumstances of the case. In Railway Co. v. McDaniels, 107 U. S. 460, 2 Sup. Ct. Rep. 932, Justice HARLAN says: "Ordinary care implies the exercise of reasonable diligence, and reasonable diligence implies * * * such watchfulness, caution, and foresight as, under all the circumstances, * * * prudent officers ought to exercise. * * * A degree

of care ordinarily exercised in such matters may not be due or reasonable or proper care, and therefore not ordinary care within the meaning of the law." In Railway Co. v. Goddard, 25 Ind. 185, it is said: "Ordinary care is that degree of care which a person of ordinary prudence is presumed to use under the particular circumstances to avoid injury. It must be in proportion to the danger to be avoided." In Fletcher v. Railway Co., 1 Allen, 9, "ordinary care" is defined as synonymous with "reasonable care," and as having relation to the situation of the parties at the time. In Brown v. Lynn, 31 Pa. St. 510, the expression "ordinary care" is defined at length, and the court says: "In case of great danger great care and caution will be but ordinary care. But if the circumstances are such that but little risk or danger may be reasonably apprehended, then a much less degree of care will be ordinary care." In Walsh v. Railway, etc., Co., 10 Or. 254, the court says ordinary care has relation to the situation of the parties and the business in which they are engaged, and varies according to the particular circumstances under which it is to be exercised. But the question here covered not only "ordinary care," but "prudence" as well. "Prudence means that degree of care required by the exigencies or circumstances under which it is to be exercised. And. Law Dict. In Fassett v. Roxbury, 55 Vt. 556, the court defined this very expression "ordinary care and prudence" as meaning that degree of care and prudence that careful and prudent men would exercise in the circumstances." So that the question submitted to the jury presented the entire subject of appellant's duty in the handling of its locomotive, whether the care required was usual or unusual. The precise meaning of the question in this respect, however, considering the answer of the jury, is perhaps not very important, except that, impressed with the meaning which respondent seems inclined to give it, it might be claimed that the question of the exercise by appellant of the extraordinary care required by the circumstances of wind and weather was another issue, not covered by the special verdicts.

Appellant claims that the evidence in this case did not justify the answer of the jury to said question No. 8, by which they found

that the locomotive was not managed with ordinary care and prudence. It therefore becomes important to inquire to what extent the carefulness and diligence required of a railway company in the management of its locomotive and trains depend upon conditions of wind, weather, and surroundings, with a view of then ascertaining whether or not there is any evidence of negligence on the part of appellant in failing to exercise that degree of care required by the circumstances. Here, as so often elsewhere, the maxim *sic utere tuo ut alienum non laedas* applies. While the company has the undoubted legal right to run its trains by the use and aid of a dangerous agent, it must not so exercise such right as unnecessarily to endanger the property of others. In Johnson v. Railway Co., (Minn.) 16 N. W. Rep. 488, in answer to a special question, the jury had returned that the engineer did not manage the engine in a careful and prudent manner, and the court, in reviewing the evidence to sustain such finding, hold that it was proper for the jury to take into consideration, as against the opinion of the engineer, the facts that a very high wind was prevailing, and that the place where the fire occurred was a village, with buildings standing near the track. The court refused to set aside such answer, saying that the burden was on the company to show such care as the circumstances required, and the court would not say that the conclusion of the jury was not warranted by the evidence. It does not matter that in that state (Minnesota) the presumption of negligence is fixed by statute, for the rule, so far as it would affect this case, is the same here, though not by force of statute. In Fero v. Railway Co., 22 N. Y. 209, the court held that the conditions and circumstances immediately present and surrounding should be taken into account in determining the degree of care required of the company. In Hayes v. Railway Co., 45 Minn. 17, 47 N. W. Rep. 260, where the evidence tended to show that the season was dry, and the day very windy, the question being upon the management of the engine, the court says: "Usual and ordinary care in the operation and management of the locomotive may not have been sufficient. It may not have been such care as common prudence might have dictated, and apparently demanded, taking into consideration the

existing circumstances and surroundings." We think the doctrine of these cases is fair to both the railroad company and the public, that the care to be exercised by both parties, in order to avoid liability on account of negligence on the one hand or contributory negligence on the other, must depend upon circumstances, and that in any case the negligence which creates liability is a want of such care as common prudence would dictate under existing conditions. That is the very principle upon which the general doctrine of actionable negligence rests and is developed.

As before remarked, the jury found in favor of the company upon the charge of negligence, except in respect to the management of the locomotive, and as to that it found against the company, so that the general verdict must stand or fall upon the evidence upon that specific issue. Is there any substantial evidence in the case to sustain the finding of the jury that the defendant company did not handle its locomotive as a competent man of ordinary prudence would have done under the circumstances then existing? In Kelsey v. Railway Co., (S. D.) 45 N. W. Rep. 204, and again in White v. Railway Co., (S. D.) 47 N. W. Rep. 146, this court held that when negligence complained of consisted in defective appliances or careless management a *prima facie* case was made when the damage was shown to have been caused by sparks from the locomotive, and that it then devolved upon the company, in order to avoid liability, to show that the locomotive was not in a defective condition, and was not unskillfully or carelessly handled. If, upon all the evidence in this case, it was permissible for the jury to find that the locomotive was not handled as a skillful engineer of ordinary prudence would have handled it under the circumstances, then the answer to question No. 8 was proper, and the general verdict was right; otherwise the answer and the general verdict were wrong. The jury specifically found that the ash pan, dampers, and other portions of the engine were in good condition at the time of the fire. They specifically found that the engineer and fireman in charge of the engine were prudent and competent persons to perform their duties. With these facts established, let us look a little further at the evidence bearing upon the manner of handling the engine. Both the engineer and fire

man testified that she steamed splendidly the day of the fire; that along where the fire occurred she was being worked with a light throttle, and about an eight-inch stroke, which, according to the testimony of Sheldon, the roundhouse foreman, was a light and proper working of the engine. The fireman testified that he cleaned out the ash pan at Egan, which was only nine miles back of where the fire started; that the forward damper was closed and the back damper open; tells why this was so; and that when so running there was less liability of the emission of sparks from the smokestack. Whether, under ordinary circumstances, this would sufficiently rebut the presumption of negligence arising solely from the fact of the fire, we need not inquire, for the evidence shows that the day was very windy, and on that account the defendant company was chargeable with increased carefulness. This is the claim of respondent, and we think it is right. But the fact still remains that its liability depends upon its negligence. It must in some respect have failed to do what, under the circumstances, it ought to have done; and, while it would not be right to condemn every verdict finding negligence in which the jury could not specifically name the exact act or omission constituting the negligence, still the general probative effect of all the evidence must be to leave the company fairly chargeable with fault for doing or not doing something which it ought not or ought to have done. Nothing is suggested by the facts or in the argument of counsel to intimate in what respect the defendant company neglected to do what a prudent handling of its locomotive required, or what precautionary measures in the running of its train could have been adopted to diminish its danger on account of the wind. In this respect the facts in this case are significantly different from the facts in the cases already referred to, where it was held that the degree of care required depended upon the attendant circumstances, and in which the verdict of the jury finding negligence was allowed to stand as not inconsistent with the evidence.

In Johnson v. Railway Co., *supra*, the opinion of the court says: "The fact as to whether proper care was exercised was left to rest only upon the opinion of the engineer. None of the

facts as to the manner of operating the engine were presented. The reason or necessity for the discharging of an unusual quantity of sparks (if the fact was so) was not explained." But in this case it does appear that at the time, and the only time, the sparks were seen to come from defendant's locomotive was when it was laboring terribly hard to go up the grade. It is a matter of common knowledge that a locomotive must necessarily work harder in pulling a train up a grade than in taking it down a grade or on a level track. It is also well understood that it would be impracticable for any company to have a continuously level track. There is no claim that there was any negligence in the construction of its road, or that it was negligence to run its trains over the road as constructed with the grade as it existed. The witness who testified to seeing the sparks also testified that at the same time the engine was "going slowly," thus forbidding the inference that the severe laboring of the engine—presumably the cause of the unusual emission of sparks—was unnecessary. The company could not be required to stop its train even though that were the only way to avoid the issue of sparks and consequent danger to adjoining property. The running of trains for the transportation of passengers and freight was the business for which the company was organized and chartered. It had a right to run its trains on windy days as well as on still days, and to run as nearly as possible on schedule time. Railway Co. v. Anderson, 20 Mich. 244. In the Johnson Case, as before observed, there was no explanation of why an unusual quantity of sparks was being emitted by the locomotive at the time and place of fire. The fire occurred in a village, just outside the depot grounds, and it is not unreasonable to suppose that there was little, if any grade there, for it is a matter of general understanding that stations are located where the track is level, so as to avoid the stopping and starting of trains on a grade. It was shown that an unusual quantity of sparks was thrown out by the engine, but nothing appeared to account for such fact. It did not appear that there was any up grade there, but, on the contrary, the fair inference was otherwise. There was no evidence as to how the locomotive was handled, or its rate of speed, or the length or weight of the train. In

all these respects the evidence in this case is very different.    Here
was an up grade, which the train was compelled to ascend or stop.
No carelessness is apparent in requiring undue labor on the part
of the engine, for the evidence is uncontradicted that it was going
slowly, and it is not claimed that the train was an unduly long or
heavy one.    It was a light train, as testified to by the engineer.
Both the engineer and the fireman testify in detail how the loco-
motive was managed, and that there was nothing in such manage-
ment or handling that would tend to increase the danger from
sparks.    In Fero v. Railway Co., *supra*, the engine was standing
still upon a side track within 30 feet of the plaintiff's house.    The
house was being repaired, the floor was strewn with shavings,
and the outside door was open.    The wind was blowing towards
the house.    In its opinion the court says: "During the time the
engine thus stood upon the track coals and sparks were emitted in
large quantities, and were driven by the wind in the direction of
the house, and no watch appears to have been kept over them,
nor in fact any attention whatever on the part of any one in the
defendant's employment paid to the matter."    Thus the facts in
that case plainly suggest certain precautions which the company
should have taken, and in default of which it was fairly chargeable
with negligence.    In Hayes v. Railway Co., *supra*, the jury found
specially that the engineer and fireman in charge were not skill-
ful and competent, and that they did not manage the locomotive
skillfully and carefully; but no facts are given showing how the
engine was managed, or what might have accounted for the sparks
which are supposed to have caused the fire.    The presumption was
that the finding was right.    A conclusion of negligence in the
handling of an engine might be fairly inferable from the unex-
plained fact that unusual quantities of sparks were thrown from
the smokestack; but such conclusion might not be fairly inferable
when it was further shown that the engine was pulling a train up
a grade against or partially against a strong wind, thus compel-
ling the unusual labor of the engine, and accounting for the ex-
traordinary issue of sparks.

When the jury found and replied to questions Nos. 2, 3, 4, 5,
and 6, that the engine at the time of the fire was equipped with

approved appliances to prevent the escape of fire; that there were no holes in the netting larger than the regular meshes made by the crossing or weaving of the wires, except the place covered by the patch; that the patch was in good condition, and that it was fastened close and tight to the netting; and that all parts of the engine were in good condition,—they found facts which we must accept as established, because not assailed by either party. These facts are entirely inconsistent with the escape from the smokestack of a coal or cinder of the size and character testified to by a witness for plaintiff. Such testimony must have been rejected by the jury, or they could not have found as they did as to the condition of the netting.

So far we have treated this case as though without question the fire was set while the train was making the up grade referred to,—that appearing to be the theory upon which respondent has considered and argued the case,—and upon that theory even we should find it difficult to justify the verdict. But appellant claims, and we think the evidence more strongly tends to that view, that the fire occurred after the train had made the up grade, and was on a nearly level track. The direct evidence as to the location of the fire is as follows: Engineer Knapp testifies: "The fire, as I understand it, occurred somewhere east of the side track. * * * The grade from Flandreau towards the stub track, before we strike it, is slightly down. It is inclined for about half a mile, and then it is about level." Fireman Roberts says: "I remember the 10th day of October, '85, and know the place where the fire started. I was running on the road after this time, and frequently saw the place where it started. * * * We went past the up grade to where the fire was started, and along there is down grade for half or three-quarters of a mile." McKenzie, the section foreman, testifies: "I know where the fire started. It started about half a mile east of the double track. * * * Where the fire started it was about level." The stub or double track referred to was located by other witnesses as east of the grade, and put there to allow heavy trains going east to divide, a part of the train being taken up the grade and left on this side track while the locomotive went back and brought up the balance of the train. This

location of the fire is not inconsistent with the evidence of Brown, the witness who testified to the unusual quantity of sparks the engine was throwing off. He says he was driving his team in a northeasterly direction, and the train was coming from the west. His horses were uneasy, and he stopped 25 or 30 rods from the track for the train to pass, and it was not until the train had passed him "maybe fifty rods, maybe more," that the fire started; but the 50 rods or more which the train had gone to the east before the fire was started might have taken it over the grade, and this would leave the fire located where the defendant's witnesses place it. The location of the fire with reference to this grade is important in this respect: The only evidence of negligence in the management of the locomotive, except as to the finding of the coal or cinder already noticed, was by this witness, who testified to seeing an unusual quantity of sparks coming from the engine. Aside from his testimony the answer to the eighth question and the general verdict rested upon the presumption of negligence arising from the fact of the fire. But when he saw this unusual quantity of sparks was when the engine was laboring terribly hard to go up the grade. There is no evidence as to the throwing of sparks, nor in fact any evidence on the part of the plaintiff as to the handling of the engine, except while it was going up the grade. If, therefore, the fire was set east of the double track, or after the train had gone over the grade,—which we think the evidence shows,—there is, as we read it, no evidence at all as to management of the locomotive, except that given by defendant's witnesses, which we have already noticed. We believe and are constrained to hold that there was no substantial evidence to support the answer of the jury to question No. 8, and, accepting the answers of the jury to the other questions as conclusive, following the rule laid down by this court in Kelsey v. Railway Co., (S. D.) 45 N. W. 204, the answer to said question No. 8 and the general verdict should have been set aside. The judgment of the court below is reversed and the case remanded for a new trial.

All the judges concurring.